UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RASZELL REEDER,

                Plaintiff,

      -v-                                            9:24-CV-514 (AJB/DJS)

S. WRIGHT *et al.*,

                Defendants.
_____

**APPEARANCES:**                                       **OF COUNSEL:**

RASZELL REEDER
Plaintiff, Pro Se
94-A-6388
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403

HON. LETITIA JAMES                        ALEXANDRA L. GALUS, ESQ.
New York State Attorney General          Assistant Attorney General
Attorneys for Defendants
The Capitol
Albany, NY 12224

**Hon. Anthony Brindisi, U.S. District Judge:**

<u>**ORDER AFFIRMING MAGISTRATE JUDGE DECISION**</u>

      This is a 42 U.S.C. § 1983 action brought by incarcerated *pro se* plaintiff Raszell Reader ("plaintiff"), whose operative complaint alleges that Correction Officers employed by the New York State Department of Corrections and Community Supervision ("DOCCS") at Mid-State Correctional Facility violated his constitutional rights. Dkt. No. 13. The matter was initially assigned to U.S. District Judge Mae A. D'Agostino, who reviewed the original and amended pleadings, dismissed certain claims, and ordered four of the defendants— Brinkerhoff, Johnson,

Domser, and Wright—to respond to plaintiff's § 1983 Eighth Amendment claims for excessive force and failure to intervene. Dkt. No. 16.

Defendants appeared through counsel, Dkt. No. 28, answered the remaining claims in the operative pleading, Dkt. No. 30, and began a period of discovery. The matter was reassigned to this Court, Dkt. No. 32, but remained referred to U.S. Magistrate Judge Daniel J. Stewart for pre-trial supervision, which included the scheduling of motion deadlines. *See, e.g.*, Dkt. No. 43.

On August 14, 2025, with discovery nearing an end, defendants, through their counsel, Assistant Attorney General Alexandra L. Galus ("AAG Galus"), sought a sixty-day extension of the dispositive motion deadline. Dkt. No. 45. In that letter request, AAG Galus explained that she had been "unexpectedly out of the office for several days in July 2025" on a personal matter and was "scheduled to begin trial with Judge D'Agostino" in August of 2025. *Id*. Judge Stewart granted defendants' request and reset the motion deadline to October 17, 2025. Dkt. No. 46.

On October 17, 2025, defendants moved for summary judgment dismissing the remaining § 1983 claims in the case. Dkt. No. 47. In support of this motion, AAG Galus filed declarations from defendants Brinkerhoff, Johnson, and Domser. Dkt. Nos. 47-2, 47-3, 47-4. But she did not file a declaration on behalf of defendant Wright. Instead, AAG Galus filed a short letter motion in which she explained that defendant Wright was "currently out of the country and was not able to provide his signed declaration in advance of his departure." Dkt. No. 49. Accordingly, AAG Galus explained that she intended to provide his declaration "to the Court by next week," when defendant Wright returned stateside. *Id*.

On October 20, 2025, Judge Stewart denied defendants' letter request to file an untimely declaration. Dkt. No. 51. Defendants moved for reconsideration. Dkt. No. 52. There, AAG Galus explained in relevant part that:

> While we understand the Court denied our prior request for leave to file Defendant Wright's declaration after the existing summary judgment deadline, we request the Court's leniency in accepting the signed declaration at this time. The declaration contains information essential to fair determination of the matter and does not introduce any surprise or undue delay to the proceedings.
>
> We sincerely apologize for the late submission and for any inconvenience this may cause the Court. We respectfully as [*sic*] that, in the interest of justice, the Court reconsider and permit the late filing so that the record before the Court may be complete.

Dkt. No. 52. Judge Stewart denied reconsideration. Dkt. No. 53. Defendants have appealed Judge Stewart's orders refusing to accept Wright's untimely declaration. Dkt. No. 54.

An order resolving a party's motion to amend a court-ordered scheduling deadline is a non-dispositive decision. *See Cardew v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 743 F. Supp. 3d 523, 526 (W.D.N.Y. 2024). A magistrate judge's resolution of a non-dispositive matter may only be modified or set aside when it is "clearly erroneous" or "contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* FED. R. CIV. P. 72(a).

A decision is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir. 2004) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A decision is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Galloway v. County of Nassau*, 589 F. Supp. 3d 271, 277 (E.D.N.Y. 2022).

Defendants argue that Judge Stewart's denial of their "brief extension request" amounted to reversible error. Dkt. No. 54. In their view, Judge Stewart failed to "explain the basis for the denial" or "address whether good cause exists." *Id*. According to defendants, their request was supported by "good cause" because: (1) discovery was not unnecessarily delayed; (2) defendant

Wright was out of the country; (3) they timely filed their motion, "except for one declaration"; (4) defendant Wright will be significantly prejudiced by having to go to trial on claims that are meritless; and (5) a contrary result would be unfair to them. *Id*. at 6–8.

These arguments are rejected. First, defendants' appeal mischaracterizes the nature of their underlying request. Defendants did not file a "brief extension request" of the dispositive motion deadline. Defendants already filed a dispositive motion at the deadline—the incomplete motion for summary judgment. Instead, as Judge Stewart correctly intuited, defendants sought "to file an untimely declaration in support of [that] motion for summary judgment." Dkt. No. 51.

Second, defendants' appeal incorrectly presumes that Judge Stewart bore some obligation to explain why he had denied their request to file the declaration out of time. Dkt. No. 54-1 at 5 ("Judge Stewart's Orders . . . did not explain the basis for the denial[.]"). But absent a showing of "good cause," Judge Stewart was entitled to deny the request, which undisputedly ran afoul of the filing deadline that he had already set and then reset. *See, e.g.*, *Dolengo v. Nw. Airlines, Inc.*, 1993 WL 159964, at *4 (S.D.N.Y. May 10, 1993) (Sotomayor, J.) ("[C]ounsel must respect the deadlines set by a judge.").

Third, defendants' appeal improperly tries to shift the burden of showing "good cause" to Judge Stewart. Dkt. No. 54-1 at 5 ("Judge Stewart[ ] . . . did not . . . address whether good cause exists."). That burden was not his to bear. "The burden of demonstrating good cause rests with the movant," not the magistrate judge. *Ramchandani v. CitiBank Nat'l Assoc.*, 616 F. Supp. 3d 353, 357 (S.D.N.Y. 2022).

Fourth, the Court rejects defendants' assertion that they have established "good cause" under the circumstances. "Good cause" depends heavily on the diligence of the movant. *See, e.g.*, *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007). According to

defendants, they "acted diligently in trying to comply with the scheduling order" by filing their incomplete motion for summary judgment with the intention of filing the missing declaration no more than a short time after the deadline expired. *See* Dkt. No. 54 at 7.

But neither an intent to file a document out of time, nor a request to be permitted to do so, would qualify as "diligence." "Diligence" entails "[s]teady application to one's business or duty; persevering effort to accomplish something undertaken." *United States v. Provenzi*, 349 F.R.D. 600, 603–04 (W.D.N.Y. 2025) (quoting Black's Law Dictionary (12th ed. 2024)). A showing of diligence might have included information about one or more of the following: (1) what efforts, if any, counsel undertook to prepare defendants' motion for summary judgment in the sixty-day period after she received an extension; (2) when, if ever, counsel contacted Wright to discuss his affidavit (assuming counsel did not take for granted that her client would agree to sign it on the eve of the new deadline); (3) when, if ever, counsel became aware that her client was not going to be available at the deadline; and (4) what, if anything, counsel did to try to meet the deadline once she became aware of her client's unavailability.

Fifth, the arguments in defendants' appeal fail to account for an important dimension at play in this civil rights action—plaintiff is incarcerated and unrepresented. Although defendants are sure that plaintiff "will not suffer any prejudice if [the untimely declaration] is accepted," the Court is far less certain. Civil litigation is challenging enough for licensed attorneys. It is more challenging for incarcerated litigants, who in addition to lacking formal legal training also have to deal with the unique hurdles posed by the prison environment. *See, e.g.*, *Houston v. Lack*, 487 U.S. 266 (1988). That is why the Second Circuit has repeatedly cautioned the district courts that they have an obligation to ensure fairness to *pro se* parties. *See, e.g.*, *Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013).

In fact, the claim- and case-ending consequences that often flow from summary judgment have resulted in the Second Circuit's imposition of an extra procedural safeguard layered on top of the usual "special solicitude." On summary judgment, the district court is obligated to ensure that a *pro se* litigant has "actual notice, provided in an accessible manner, of the consequences of [his] failure to comply with the requirements of Rule 56." *Irby v. N.Y. City Transit Auth.*, 262 F.3d 414, 414 (2d Cir. 2001).

Defendants served plaintiff with the standard version of this notice when they filed their incomplete motion for summary judgment. Dkt. No. 47 at 4. And the next day, the Clerk of the Court mailed plaintiff a second copy of this standard notice, along with a letter that emphasized the opposition deadline and cautioned plaintiff that the failure to timely respond might result in this case being dismissed. Dkt. No. 50.

The Court is not aware of any "one missing declaration" exception to this Second Circuit safeguard. And frankly, the Court is not interested in trying to find out where this line might be drawn by an appellate panel. Instead, the best practice in a civil case involving an unrepresented, incarcerated litigant is always to avoid creating unnecessary confusion. One way to do that is to maintain a clean record, *e.g.*, to minimize disjointed briefing or *seriatim* filings, which need to be individually mailed to the plaintiff and may arrive out of order (or sometimes not at all).

That said, defendants appear to have mistakenly believed that their improvised approach to the missing declaration was preferable to seeking a further extension of the dispositive motion deadline itself (even though Judge Stewart had readily granted defendants' first request). In light of that, and mindful of the concerns raised by disjointed summary judgment briefing involving a *pro se* litigant, the Court denies defendants' incomplete motion for summary judgment without prejudice and *sua sponte* extends the dispositive motion deadline for an additional thirty days.

In reaching this conclusion, the Court has focused on fairness to the parties. But appeals to fairness are not some universal remedy for attorney error. Sometimes it might be easier to ask for forgiveness than permission. Litigation in federal court is not one of those times. Counsel is warned that deadlines in federal court are not optional and improvisation is not a sound approach to federal civil procedure. Further appeals that amount to nothing more than second-guessing the considered judgment of the trusted and hard-working magistrate judges—in this civil case or any other—will not be well-taken.

Finally, the Court apologizes to plaintiff for the delay that this appeal has caused in this case as well as any confusion that defendants' approach to briefing might have created. Plaintiff should expect to respond to a renewed summary judgment motion from defendants, but this time with all four signed declarations, along with any other record evidence necessary to substantiate the facts on which defendants intend to rely. FED. R. CIV. P. 56(c)(1)(A); N.D.N.Y. L.R. 56.1(a).

Therefore, it is

ORDERED that

1. Judge Stewart's October 23, 2025 Order is AFFIRMED;

2. Defendants' appeal (Dkt. No. 54) is DENIED;

3. Defendants' letter motion seeking to stay the summary judgment briefing deadlines during the pendency of this appeal (Dkt. No. 56) is DENIED as moot;

4. Defendants' summary judgment motion (Dkt. No. 47) is DENIED without prejudice to renew; and

5. The dispositive motion deadline is RESET to THIRTY DAYS from the date of this decision.

- 8 -

The Clerk of the Court is directed to terminate the pending motions and reset the deadline accordingly.

**IT IS SO ORDERED.**

Dated: November 26, 2025
       Utica, New York.

Anthony J. Brindisi
U.S. District Judge